Argued May 9, 1974; reargued October 9,
petition allowed October 23, 1975

In the Matter of the Application of STEPHEN
SANFORD HENIGSON, for admission to practice
law in the State of Oregon.

543 P2d 269

*John E. Jaqua,* of Jaqua & Wheatley, Eugene, argued and reargued the cause and filed briefs for applicant.

*Kenneth E. Roberts,* Portland, argued and reargued the cause for Oregon State Bar. With him on the briefs was Watson D. Robertson, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN,* HOWELL and BRYSON, Justices, on May 9, 1974.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, TONGUE, HOWELL and BRYSON, Justices, on October 9, 1975.

---

* Holman, J., did not participate in this decision.

PER CURIAM.

This is a petition for review of the recommendation by the Trial Committee that the applicant, Stephen Henigson, be denied admission to the Oregon State Bar.

Applicant successfully passed the Oregon State Bar examination in 1972 but was denied admission to the Bar on the basis that he did not possess the requisite good moral character. The applicant petitioned for review of that decision, and the matter was referred to a trial committee of three members of the Oregon State Bar. For reasons discussed below, two sets of hearings were held by the Trial Committee.

The first hearing was held before the Trial Committee on July 19, 1973. Counsel for the Bar alleged three grounds for denying applicant admission to the Bar. However, the Trial Committee found against the applicant only on the third allegation, which stated:

"The applicant does not possess good moral character or general fitness in that the applicant was indicted on or about June 16, 1969 for a violation of a statute of the State of Oregon involving the crime of receiving and concealing stolen property and that the disposition of said criminal charge leaves the question of guilt or innocence of that charge undetermined and in doubt."

At the hearing, the evidence disclosed that in the spring of 1967 the applicant was an undergraduate student living in a dormitory on the Willamette University campus. Two other students, Robert Hamel and Earl Hurlburt, were roommates living on the same floor as applicant. Hamel and Hurlburt owned cameras and related equipment which were stolen in March, 1967, just before spring vacation. The theft and the subsequent police investigation apparently were common knowledge among the residents of the dormitory.

Two years later, in April, 1969, when applicant was a first-year law student at Willamette University College of Law, he was visited in his room by another law student who recognized the missing cameras and reported his finding to the police. Applicant was arrested and charged with possession of stolen property. The charges were later dismissed without a trial.

At the hearing before the Trial Committee, the applicant testified that he had purchased the cameras and related equipment in April, 1968, from Bill Phillips, another undergraduate student who lived on the same floor in the dormitory at the time of the theft. He also testified that he advised his attorney the morning after his arrest that he purchased the goods from Phillips and that he paid Phillips in cash because Phillips did not want a check. Phillips, however, testified that applicant's version was false and an "absolute lie."

At the conclusion of the first hearing the Trial Committee, one member d i s s e n t i n g, recommended against the applicant's admission. The majority of the Trial Committee obviously believed Phillips and disbelieved applicant. The majority report also emphasized the fact that applicant acted startled when confronted by the police, asked if they had a search warrant, and did not tell the police he had purchased the cameras from Phillips and had paid cash for them.

Following the Trial Committee's decision, the applicant appealed to this court. However, after briefing and argument, but before a decision, the Bar moved for a remand and the matter was referred back to the Trial Committee for further evidence. Two additional hearings were held, one on November 25, 1974, and the other on February 14, 1975.

At the November 25 hearing, Hamel, one of the

owners of the stolen cameras, testified that he had shown his cameras to applicant about a week before they were stolen. There was also evidence that it was common knowledge in the dormitory that Hurlburt and Hamel had extensive camera equipment and that they did photography work for the university. Hurlburt testified that after the theft he suspected Phillips, not applicant, to be the thief.

At the same hearing, counsel for applicant offered evidence which seriously challenged not only the credibility of Phillips but, if true, also showed that Phillips had committed various thefts at different times. This evidence disclosed that Phillips had stolen a stereo set from one student and a set of phonograph records from another, that he had stolen food from the campus restaurant, and that while working part-time as an investigator for two law firms he falsified his work time sheets. The hearing was then continued so that Phillips could be produced for rebuttal.

The final hearing was held on February 14, 1975. At that time Phillips admitted that he had stolen the stereo, the set of records, and food from the campus restaurant when he was an undergraduate student at Willamette University in the spring of 1967. However, he continued to deny that he had sold applicant the cameras. Following that hearing, a majority of the Trial Committee again recommended that the applicant be denied admission.

Clearly, one of the basic issues confronting the Trial Committee in all of its hearings was the relative credibility of the applicant and of Phillips. One or the other had to be lying regarding the purchase of the cameras. From the record in this case, it is clear that Phillips' credibility was destroyed. Consequently, the conflict between applicant's testimony and that of Phillips should be resolved in applicant's favor.

The only remaining question is whether applicant knew or believed that the cameras were stolen at the time he purchased them. Considering all the evidence in this case—including evidence that applicant did not purchase the cameras until one year after they were stolen, that there was nothing unique about the appearance of these cameras and that many cameras have the same physical appearance—we do not believe that the evidence establishes that applicant knew or believed that the cameras he purchased were stolen.

The proceedings in this case have been before this court and the Bar for three years in several different hearings. Counsel for both the Bar and the applicant have diligently attempted to present all the facts. Although we have not attempted to set forth all the testimony from the numerous witnesses, including the character witnesses, we have examined the transcript not once but several times in appreciation of our obligation to the public and to the applicant. Considering all the facts and circumstances,[1] it is our conclusion that applicant is of good moral character and that he is entitled to admission to the Oregon State Bar.

It is so ordered.

---

[1] Evidence was also introduced that applicant has been employed by the federal government since 1973 in the Department of Health, Education and Welfare as a legal assistant, that his work is very satisfactory, and that he is considered to be a sincere, conscientious and trustworthy member of the staff. Moreover, in the argument before this court, counsel for the Bar, with commendable frankness, conceded that applicant's record since he passed the Bar examination has been excellent.